1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   J & J SPORTS PRODUCTIONS, INC.,            No. 1:14-cv-01353-DAD-JLT

12              Plaintiff,

13          v.                                   ORDER DENYING BOTH PARTIES
                                                 CROSS-MOTIONS FOR SUMMARY
14   MARK THOMAS BAILEY, individually           JUDGMENT WITHOUT PREJUDICE AND
     and d/b/a MADD BAILEYS,                     REOPENING DISCOVERY
15
              Defendant.                         (Doc. Nos. 13 and 14)
16

17

18
            This action arises from the alleged interception and exhibition of *"The One" Floyd*
19
     *Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight Championship Fight Program.*
20
     The action was initiated on August 28, 2014 by plaintiff, J & J Sports Productions, Inc.
21
     ("J & J"), against defendant Mark Bailey, alleging violations of the Communications Act (47
22
     U.S.C. § 605), the Cable Television Consumer Protection and Competition Act (47 U.S.C.
23
     § 553), the California Business and Professions Code § 17200, and conversion.  Before the
24
     court now are cross-motions for summary judgment filed on October 5 and 21, 2015 by
25
     plaintiff J & J and defendant Bailey, respectively.  (Doc. Nos. 13 and 14.)  Both parties filed
26
     oppositions to the other's motion.  (Doc. No. 15 and 19.)  Both parties filed replies.  (Doc.
27
     Nos. 20 and 21.)  On June 21, 2016, the motions came before the court for hearing.  (Doc.
28
                                              1

No. 29.)  Attorney Matthew Pare appeared at the hearing telephonically on behalf of

defendant.  Attorney Thomas Riley appeared telephonically on behalf of plaintiff.  (*Id.*)

After oral argument, the cross-motions were taken under submission.  For the reasons set

forth below, the parties' cross-motions for summary judgment are denied without prejudice

and discovery and law and motion are reopened in this action.

**BACKGROUND**

A.    **Statement of Facts**

Both parties have submitted statements of disputed facts.  (Doc. Nos. 13-1 and 14-6)

Both parties filed responses to the other's statement of disputed facts.  (Doc. Nos. 15-1 and

19-1.)  In addition, plaintiff submitted the declaration of Joseph Gagliardi, president of J & J,

and the affidavit of investigator David Kelly.  (Doc. Nos. 13-2 and 13-4.)  Defendant Mark

Bailey has submitted his own declaration.  (Doc. No. 14-1.)  Both parties have also submitted

declarations by their respective counsel indexing evidence to be considered in connection

with the pending motions.  (Doc. Nos.13-3 and 14-2.)  This evidence submitted on summary

judgment establishes the following.

Joseph M. Gagliardi is the president of J & J.  (Doc. No. 13-4 at 1.)  J & J had the

right to license *"The One" Floyd Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight*

*Championship Fight Program* ("the Program"), along with all undercard bouts and

commentary, on September 14, 2013.  (*Id.* at 3-4.)  Madd Baileys is a small pub located in

Pine Mountain Club, California with, according to defendant Mark Bailey, a capacity of

twenty-eight people.  (Doc. No. 14-1 at 1.)  Bailey has been the owner of Madd Baileys at all

times relevant to this suit.  (Doc. No. 13-3 at 7.)

On September 14, 2013, investigator David Kelly went to Madd Baileys for fifteen

minutes.  (Doc. No. 13-2 at 1.)  He was not required to pay a cover charge to enter the

establishment.  (*Id.*)  He encountered a waitress but did not order anything.  (*Id.*)  There,

Kelly watched round two of the Cano vs. Theophane fight, one of the undercard bouts of the

Program, on one of the ten television sets he observed inside of Madd Baileys.  (*Id.*)  Kelly

noted several distinguishing elements inside the establishment:  the entrance on the east wall,

2

1   the bar on the north wall, a pool table in the southwest corner, a karaoke stand in the

2   southeast corner, a stairway to the downstairs in the center of the room, and tables and chairs

3   scattered throughout. (*Id.*) Kelly took three head counts while he was inside of Madd

4   Baileys finding that there were four, three, and four people in the establishment at the time of

5   those counts. (*Id.*) He estimated the capacity of the establishment to be fifty people and

6   observed six cars in the parking lot. (*Id.*)

7        When the Cano vs. Theophane fight was shown, defendant Mark Bailey was not at

8   the pub. (Doc. No. 14-1 at 1.) There was no advertising that the fight would be shown at the

9   establishment that night. (Doc. No. 14-1 at 2.) There was no increase in sales revenue on

10  the day of the exhibition as compared to similar days. (*Id*.) The gross revenue at the

11  establishment was $1,381.25, which is typical for Madd Baileys on a Saturday. (*Id.*) The

12  Program was available for purchase on the internet the day of the fight. (Doc. No. 14-3 at 9.)

13       Domestic commercial establishments were required to pay a commercial sublicense

14  fee to broadcast the Program. (Doc. No. 13-4 at 3.) For a commercial establishment such as

15  Madd Baileys, the commercial sublicense fee was $2,200. (*Id*.) Mark Bailey, however,

16  never lawfully licensed the Program from J & J. (*Id*.) Madd Baileys had an account with

17  DirecTv at the time the Program was shown. (Doc. No. 14-1 at 1.) The DirecTv system was

18  professionally installed at the place of business. (*Id*.) Mark Bailey stated in his declaration

19  that he relied upon the provider to provide a lawful signal and charge him the correct price

20  given the nature of his establishment. (*Id*.) Madd Baileys, however, has commercial

21  accounts with the telephone and electric companies for those utilities at the pub. (Doc. No.

22  13-3 at 26.) Mark Bailey has not previously been accused of TV signal piracy. (Doc. No.

23  14-1 at 2.) Mark Bailey also declared that he did not authorize the piracy or know that the

24  Program was going to be displayed at Madd Baileys on the night in question. (*Id.*)

25                                    **LEGAL STANDARD**

26       Summary judgment is appropriate when the moving party "shows that there is no

27  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

28  law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325.); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can

1    only consider admissible evidence in ruling on a motion for summary judgment.").  The

2    opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

3    affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*,

4    477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d

5    626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a

6    reasonable jury could return a verdict for the nonmoving party.  *See Wool v. Tandem*

7    *Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

8            In the endeavor to establish the existence of a factual dispute, the opposing party need

9    not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

10   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

11   versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of

12   summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether

13   there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

14           "In evaluating the evidence to determine whether there is a genuine issue of fact," the

15   court draws "all inferences supported by the evidence in favor of the non-moving party."

16   *Walls v. Central Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the

17   opposing party's obligation to produce a factual predicate from which the inference may be

18   drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),

19   *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the

20   opposing party "must do more than simply show that there is some metaphysical doubt as to

21   the material facts. . . .  Where the record taken as a whole could not lead a rational trier of

22   fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475

23   U.S. at 587 (citation omitted).

24                                    **DISCUSSION**

25   **1)  *Claims Brought Under 47 U.S.C. §§ 605 and 553***

26           Plaintiff moves for summary judgment in its favor on its §§ 605 and 553 claims

27   arguing that there is no genuine issue of material fact that defendant unlawfully intercepted

28   and broadcasted its program at Madd Baileys.  (Doc. No. 13.)  Conversely, defendant moves

                                            5

1   for summary judgement on these claims arguing *inter alia*:  (1) plaintiff lacks evidence of the

2   type of signal that was allegedly used to exhibit the Program at Madd Baileys, and (2) there

3   was no signal interception.  (Doc. No. 14.)

4        A.  *Type of Signal under 47 U.S.C. §§ 605 and 553.*

5        Defendant seeks summary judgment on the section 605 and 553 claims due to

6   plaintiff's alleged failure to meet its burden of distinguishing whether the Program was

7   exhibited via a cable signal or a satellite signal.  (Doc. No. 14 at 5.)  Plaintiff responds that

8   because Madd Baileys had DirecTv, there is sufficient evidence of a satellite violation under

9   § 605.  (Doc. Nos. 13 at 5 and 19 at 3.)  Plaintiff's argument that the cited evidence is

10  sufficient to establish a violation and to entitle it to summary judgment is not persuasive.

11       The Federal Communications Act states in part:

12           No person not being authorized by the sender shall intercept
         any radio communication and divulge or publish the existence,

13           contents, substance, purport, effect, or meaning of such
         intercepted communication to any person.  No person not

14           being entitled thereto shall receive or assist in receiving any
         interstate or foreign communication by radio and use such

15           communication for his own benefit or for the benefit of another
         not entitled thereto.

16

17  47 U.S.C. § 605(a).  Similarly, the Cable Television Consumer Protection and Competition

18  Act states that "[n]o person shall intercept or receive or assist in intercepting or receiving any

19  communications service offered over a cable system, unless specifically authorized to do so

20  by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C.

21  § 553(a)(1).

22       Sections 605 and 553 are mutually exclusive.  *J & J Sports Prods., Inc. v. Sandana*,

23  No. 1:13-cv-00842-AWI-JLT, 2014 WL 3689283, *3 (E.D. Cal. July, 23, 2014) ("Plaintiff

24  cannot recover under both Section 605 and Section 553 for the same alleged interception.");

25  *J & J Sports Prods., Inc. v. Manzano*, No. 5:08-cv-01872-RMW, 2008 WL 4542962, *2

26  (N.D. Cal. Sept. 29, 2008) ("A signal pirate violates section 553 if he intercepts a cable

27  signal, he violates section 605 if he intercepts a satellite broadcast.  But he cannot violate

28  both by a single act of interception.").  Where the evidence allows, courts have made

1  determinations as to which statute applies and subsequently denied motions for summary

2  judgment with respect to a claim brought by a plaintiff under the other statute.  *See e.g. J & J*

3  *Sports Prods., Inc., v. Delgado*, No. 2:10-cv-02517-WBS-KJN, 2012 WL 371630, *3 (E.D.

4  Cal. Feb. 3, 2012) (holding plaintiff was not entitled to summary judgment on the § 553

5  claim because the evidence demonstrated that the Program was accessed via satellite making

6  § 605 the relevant statute); *Manzano*, 2008 WL 4542962, at *3 (declining to award damages

7  under § 605 where the evidence established the defendant used his cable box to watch the

8  fight in violation of § 553, and there was no indication that a satellite dish was used).

9         Nonetheless, a plaintiff in such a case must come forward with some evidence as to

10  whether the alleged violation was a radio communication or a cable communication because

11  that is a material fact with respect to the determination of which statute applies.  Where the

12  plaintiff fails to come forward with such evidence on summary judgment, courts have denied

13  motions for summary judgment.  *See e.g.*, *Sandana*, 2014 WL 3689283, at *4 ("Because

14  Plaintiff has failed to present any evidence that the alleged interception was either a radio

15  communication or a cable communication, Plaintiff has not met its burden."); *J & J Sports*

16  *Prods., Inc. v. Torres*, No. 2:10-cv-03009-KJM-KJN (PS), 2012 WL 761926, *7 (E.D. Cal.

17  Mar 6, 2012) (holding the plaintiff's motion for summary judgment was defective because it

18  did not allege, or demonstrate through evidence, whether the transmission was via cable or

19  satellite).

20         Circumstantial evidence may provide a sufficient basis to support a factual finding in

21  signal piracy cases.  *DirecTV, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008) ("[C]ourts

22  have correctly concluded that direct evidence of signal piracy is not required to prove

23  unlawful interception.")  However, the court in *Webb* also recognized that evidence a person

24  possessed a device that *could* have been used for signal piracy does not establish that the

25  device *was* used for that purpose.  *Id.*  ("Evidence that a person possessed a pirate access

26  device, by itself, may not be enough to infer actual interception of a signal.")  Here, plaintiff

27  has presented evidence on summary judgment that defendant had DirecTv service at the

28  establishment the night of the alleged piracy, investigator Kelly observed the broadcast of the

7

1    Program at Madd Baileys, and plaintiff did not authorize Madd Baileys to exhibit the

2    Program.  (Doc. Nos. 13 at 9; 13-2 at 1; 13-4 at 2.)  However, there is no evidence before this

3    court on summary judgment suggesting that defendant did not also have cable service at the

4    establishment.  *Compare Joe Hand Promotions, Inc. v. Albright,* No. 11-cv-02260 WBS

5    CMK, 2013 WL 2449500, *5 (E.D. Cal. June 5, 2013) ("[T]here was an antenna and satellite

6    dish at the Saloon, and *while it never had cable service*, it did have a lawful television

7    service.  The reasonable inference from this evidence is that the Program was intercepted via

8    satellite service.") (emphasis added).  There is also no evidence before the court on summary

9    judgment establishing that defendant purchased a non-commercial license from DirecTV to

10   view the Program.  Likewise, there is no evidence before the court on summary judgment

11   that defendant possessed or purchased any type of device that would allow it to unlawfully

12   decrypt the satellite transmissions.  Finally, defendant Mark Bailey has declared under

13   penalty of perjury that "there was no interception or theft of a TV signal" of the Program at

14   the establishment.  (Doc. No. 14-1 at 1.)

15          Given the evidence before the court on summary judgment, the plaintiff has not come

16   forward with adequate evidence establishing a link between the TV service and the

17   exhibition of the Program at Madd Baileys.  *See J & J Sports Prods., Inc. v. Tamayo*, No.

18   2:14-cv-01997-KJM-CKD, 2016 WL 2855126, *5 (E.D. Cal. May 16, 2016) ("Where the

19   moving party will have the burden of proof at trial, it must affirmatively demonstrate that no

20   reasonable trier of fact could find other than for the moving party.")  It is appropriate to deny

21   cross motions for summary judgment where neither party meets its burden.  *See Tamayo*,

22   2016 WL 2855126, at *5.  In *Tamayo*, the court found that a reasonable jury could find that

23   the defendants did not intercept the program in question, but that the defendants also had not

24   come forward with evidence ruling out a possible interception, thereby creating a genuine

25   dispute of material fact.  *Id.*  In the instant case, plaintiff has not come forward with evidence

26   on summary judgment establishing that Madd Baileys' DirecTv service was used to view the

27   fight.  On the other hand, defendant has not come forward with evidence ruling out that

28   possibility.  Because neither party has met its burden in moving for summary judgment in its

8

1  favor, both motions will be denied as to this claim.

2      B.  *Signal Interception*

3      Defendant also seeks summary judgment in its favor on plaintiff's §§ 605 and 553

4  claims due to the plaintiff's alleged failure to come forward with evidence of an interception

5  on summary judgment.  (Doc. No. 14 at 6.)  Conversely, plaintiff argues there is no genuine

6  dispute of material fact regarding whether defendant unlawfully intercepted and broadcast

7  the Program at Madd Baileys.  (Doc. No. 13 at 8.)  Specifically, plaintiff contends that

8  intercepting, receiving, assisting in receiving, divulging, and publishing a closed circuit

9  program are all prohibited by §§ 605 and 553, making defendant liable.  (Doc. No. 19, at 12.)

10      However, the "dispositive legal point is that in order for there to be a violation . . .

11  there must be an 'interception' of a signal or transmission."  *Premium Sports, Inc. v. Connell*,

12  No. 10-cv-3753-KBF, 2012 WL 691891, *2 (S.D.N.Y. Mar. 1, 2012).  In this regard, a

13  knowing violation of the law is not required to establish liability.  *See J & J Sports Prods.,*

14  *Inc. v. Delgado*, No. 2:10-cv-2517 WBS, 2012 WL 371630, at *3 (E.D. Cal. Feb. 3, 2012);

15  *Sandana*, 2014 WL 3689283, at *4.  Nonetheless, it remains unclear whether a good faith

16  purchase of a satellite or cable service may provide a defense to such a claim.  *See J & J*

17  *Sports Prods.  Inc. v. Gidha*, No. CIV–S–10–2509 KJM–KJN, 2011 WL 3439205, at *3

18  (E.D. Cal. Aug. 4, 2011) (finding defendants could have a meritorious defense where they

19  alleged that they maintained a commercial account, but the cable provider improperly billed

20  them at the residential rate); *J & J Productions, Inc. v. Schmalz*, 745 F. Supp. 2d 844, 851

21  (S.D. Oh. 2010) (holding defendants were not liable under § 553 where they purchased

22  program from cable provider on commercial account, were billed and paid for such service

23  as commercial customers, but received cable broadcast only authorized for residential

24  customers).  In any event, in order to prevail on summary judgment plaintiff must

25  demonstrate that there is no genuine issue that defendant committed an act of interception.

26  *See Sandana*, 2014 WL 3689283, at *4

27      Here, plaintiff has presented evidence on summary judgment only that defendant had

28  DirecTv service at the establishment the night of the alleged piracy, investigator Kelly

1    observed the broadcast of the Program at Madd Baileys, and plaintiff did not authorize Madd

2    Baileys to exhibit the Program at a commercial establishment.  (Doc. Nos. 13 at 9; 13-2 at 1;

3    13-4 at 2.)  Defendant has admitted that he is the owner of Madd Baileys.  (Doc. No. 13-3 at

4    7.)  Defendant, however, has declared that he did not intercept the signal, did not authorize

5    an interception, was not present at Madd Baileys the night of the Program, and did not know

6    the Program was going to be displayed at Madd Baileys.  (Doc. No. 14-1 at 1-2.)  At

7    summary judgment the court is to draw all inferences from the evidence presented in favor of

8    the non-moving party.  *See Anderson*, 477 U.S. at 250.  This includes accepting the evidence

9    presented by the non-moving party as true.  *Id.*  In light of defendant's declarations there is a

10   genuine dispute as to whether defendant intercepted the signal of the Program.  Therefore,

11   the motions for summary judgment brought on behalf of both parties as to the signal

12   interception claim must also be denied.

13       ***2)  Conversion***

14           Defendant seeks summary judgment on plaintiff's conversion claim due to plaintiff's

15   alleged inability to establish (1) that defendant intentionally and substantially interfered with

16   plaintiffs property by taking possession of the property, preventing plaintiff from having

17   access to it, or destroying and refusing to return the property; (2) that plaintiff was harmed;

18   and (3) that the defendant's conduct was a substantial factor in causing plaintiff's harm.

19   (Doc. No. 14 at 8.)  Plaintiff also seeks summary judgment in its favor on its conversion

20   claim and in opposition to defendant's motion contends that defendant has no reason to

21   assume that plaintiff cannot support these elements of conversion.  (Doc. Nos. 13 at 12 and

22   19 at 17.)

23           The elements of conversion in California are:  (1) the plaintiff's ownership or right to

24   possession of the property; (2) the defendant's conversion by a wrongful act or disposition of

25   property rights; and (3) damages.  *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998).

26   As a strict liability tort, the knowledge, intent, good faith, and motive of the defendant are

27   immaterial to a conversion claim.  *L.A. Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th

28   1383, 1387 (2012).  For purposes of such a claim, broadcast signals and rights constitute

1   property.  *J & J Sports Prods., Inc. v. Bath*, No. 1:11-cv-1564- SAB, 2013 WL 5954892, *8

2   (E.D. Cal. Nov. 7, 2013); *DirecTV, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189 (E.D. Cal.

3   2005).

4   　　　Here, neither party is entitled to summary judgment on plaintiff's claim for

5   conversion due to the existing disputes of material fact as to the signal source and signal

6   interception.  *See, e.g., Sandana*, 2014 WL 3689283, at *5 (finding a genuine dispute of

7   material fact where the plaintiff established a right of possession but could not establish that

8   the conversion was committed by a wrongful act); *Torres*, 2012 WL 761926, at *10 (denying

9   summary judgment where the plaintiff established that it owned exclusive commercial rights

10  but failed to establish that defendant converted the broadcast signal or that plaintiff suffered

11  damages as a result thereof).

12  　　　***3)  California Business and Professions Code Section 17200***

13  　　　Defendant also seeks summary judgment on plaintiff's § 17200 claim, arguing that

14  the only remedy available to plaintiff, aside from injunctive relief, is restitution.[1]  (Doc. No.

15  14, at 11.)  Defendant argues that because the evidence on summary judgment establishes

16  that no profit was generated from the exhibition of the Program at Madd Baileys, no

17  restitution is available for plaintiff and that summary judgment in his favor as to this claim is

18  appropriate.  (Doc Nos. 14-1 at 2; 14 at 11.)

19  　　　In opposition, plaintiff argues that because defendant only addressed the damages

20  involved with the claim, not the claim itself, and the claim is derivative of the other claims,

21  summary judgment is not appropriate.  (Doc. No. 19 at 20–21.)

22  　　　California Business and Professions Code § 17203 provides:

23  　　　　　Any person performing or proposing to perform an act of unfair
        competition within this state may be enjoined in any court of
24        competent jurisdiction. The court may make such orders or
        judgments . . . as may be necessary to restore to any person any
25        money or property, real or personal, which may have been
        acquired by means of such unfair competition.
26

27  _____

28  [1] Plaintiff has not moved for summary judgment in its favor with respect to this claim.  (Doc.
    No. 13 at 12, n.3.)

A private plaintiff's remedy is limited to injunctive relief and restitution.  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002) (quoting *Cel-Tech Commc'ns, Inc. v. LA Cellular Tel. Co.*, 20 Cal. 4th 164, 179 (1999)).

As noted by plaintiff, in moving for summary judgment plaintiff contends only that restitution is unavailable in this case but fails to address injunctive relief which is also available with respect to this claim.  Accordingly, defendant has not established that he is entitled to summary judgment as to this claim and his motion with respect to this claim will be denied.[2]

### 4) *Reopening Discovery*

Although both parties here are represented by counsel, the court finds that additional relevant evidence likely remains to be discovered.  *See Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004) ("summary judgment is disfavored where relevant evidence remains to be discovered, particularly in cases involving confined *pro se* plaintiffs.")  Specifically, plaintiff has presented no evidence that defendant's DirecTv account purchased a non-commercial license to watch the Program.  If such a non-commercial license was indeed used, there is no evidence of who authorized such a purchase.  However, there is no evidence that defendant possessed or purchased any type of device that would allow it to unlawfully decrypt the satellite transmissions.  Finally, there is no evidence suggesting that defendant did not have a cable service at Madd Baileys on the night of the alleged piracy.  Such evidence is potentially discoverable by the parties and could well be dispositive of the issues presented by this action.

Consequently, in the interest of justice, the court will *sua sponte* reopen discovery and law and motion in order to allow the parties to conduct further discovery and renew their motions for summary judgment if warranted.  *See Puletu v. Fishing Co. of Alaska*, No.

---

[2]  Plaintiff does not oppose summary adjudication with respect to its claim of attorneys' fees in connection with this claim.  (Doc. No. 19 at 21.)  However, at this time the court declines to resolve the claims in such a piecemeal fashion.

C05-1752RSM, 2007 WL 2712965, at *7 (W.D. Wash. Sept. 13, 2007) (reopening discovery *sua sponte* in the interest of justice).[3]

### CONCLUSION

For all of the reasons set forth above:

1) Plaintiff's motion for summary judgment (Doc. No. 13) is denied without prejudice to the renewal of the motion after further discovery is conducted;

2) Defendant's motion for summary judgment (Doc. No. 14) is denied without prejudice to the renewal of the motion after further discovery is conducted;

3) Discovery in this action is reopened and shall be conducted so as to be completed[4] by Tuesday January 17, 2017;

4) Law and motion is reopened so that renewed motions for summary judgment may be filed on or before Tuesday February 7, 2017 and noticed for hearing in keeping with the Local Rules of this court; and

5) Final Pretrial Conference and Trial dates will be scheduled following the close of the re-opened law and motion period if necessary.

IT IS SO ORDERED.

Dated:   **November 9, 2016**        _____

UNITED STATES DISTRICT JUDGE

---

[3] Counsel are encouraged to either complete the discovery necessary to present fully supported renewed motions for summary judgment or to otherwise bring this litigation to a conclusion in a timely manner.

[4] Completed means that all additional discovery is propounded and/or conducted in a timely fashion so that any disputes regarding discovery can be presented and resolved by the assigned magistrate judge and that any discovery orders can be complied with and discovery produced pursuant to any such orders by the January 17, 2017 deadline.